## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **LAURA PENDERGEST-HOLT,** | § | |
| **R. ALLEN STANFORD, GILBERT** | § | |
| **LOPEZ, JR. and MARK KUHRT** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:09-cv-03712** |
| | § | |
| **CERTAIN UNDERWRITERS AT** | § | |
| **LLOYD'S OF LONDON and ARCH** | § | |
| **SPECIALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| *Defendants*. | § | |

## SECOND AMENDED COMPLAINT

COME NOW Plaintiffs Laura Pendergest-Holt, R. Allen Stanford, Gilbert Lopez, Jr. and Mark Kuhrt and file this Second Amended Complaint against Certain Underwriters at Lloyd's of London and Arch Specialty Insurance Company (collectively, "Underwriters"), and would respectfully show this Court the following:

## I. PARTIES

1.     Plaintiff, LAURA PENDERGEST-HOLT, is a resident of the state of North Carolina. She may be served with any subsequent pleadings through her attorney of record in this matter.

2.      Plaintiff, R. ALLEN STANFORD, is a resident of the state of Texas. He may be served with any subsequent pleadings through his attorney of record in this matter.

3.      Plaintiff, GILBERT LOPEZ, JR., is a resident of the state of Texas. He may be served with any subsequent pleadings through his attorney of record in this matter.

4.      Plaintiff, MARK KUHRT, is a resident of the state of Texas. He may be served with any subsequent pleadings through his attorney of record in this matter.

5.      Underwriters subscribing to the Lloyd's Directors' and Officers' and Company Indemnity Policy, bearing policy number 576/MNK558900 and effective August 15, 2008 to August 15, 2009 (the "D&O Policy"), including Syndicates 2987, 2488, 2623/623, 1866 and Arch Specialty Insurance Company. Underwriters are insurers authorized to do business in the State of Texas. Plaintiffs have requested issuance of summons and will effectuate service on Underwriters through their agent for service, Mendes & Mount, 750 Seventh Avenue, New York, New York 10019-6829.

6.      Underwriters subscribing to the Lloyd's Financial Institutions, Crime and Professional Indemnity Policy, bearing policy number 576/MNA851300 and effective August 15, 2008 to August 15, 2009 (the "PI Policy"), including Syndicates 2987, 2488, 1084, 1886, 400, 1183 and Arch Specialty Insurance

Company. Underwriters are insurers authorized to do business in the State of Texas. Underwriters are insurers authorized to do business in the State of Texas. Plaintiffs have requested issuance of summons and will effectuate service on Underwriters through their agent for service, Mendes & Mount, 750 Seventh Avenue, New York, New York 10019-6829.

7.      Underwriters subscribing to the Lloyd's Excess Blended "Wrap" Policy, bearing policy number 576/MNA831400 and effective August 15, 2008 to August 15, 2009 (the "Excess Policy"),[1] including Syndicates 2987, 2488, 1886, 1084/1274, 4000 and Arch Specialty Insurance Company. Underwriters are insurers authorized to do business in the State of Texas.  Underwriters are insurers authorized to do business in the State of Texas. Plaintiffs have requested issuance of summons and will effectuate service on Underwriters through their agent for service, Mendes & Mount, 750 Seventh Avenue, New York, New York 10019-6829.

## III. JURISDICTION AND VENUE

8.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1332 and 1367.

9.      Venue is proper in this judicial district and division under 28 U.S.C. §1391(b)(2) because a substantial part of the alleged events or omissions giving

---

[1] The D&O Policy, the PI Policy and the Excess Policy are referred to collectively herein as the "Policies."

rise to the claims occurred in this judicial district and division. The policies were issued to the Named Insureds within the Southern District of Texas and Underwriters are being called upon to defend the criminal action against the Plaintiffs that is pending with the Southern District.

### IV. FACTUAL BACKGROUND

10.    This case arises out of the seizure of Stanford International Bank, Ltd., Stanford Capital Management, LLC, Stanford Financial Group Company and the Stanford Group Company, among other entities (collectively, "the Stanford Group"), by the Securities Exchange Commission ("SEC") and the criminal prosecution of Plaintiffs and others by the Department of Justice ("DOJ").

11.    Plaintiff Holt was the Chief Investment officer of Stanford Financial Group Company. Plaintiff Stanford was the chairman of the board and sole shareholder of Stanford International Bank, Ltd. and the sole director of Stanford Financial Group. Plaintiff Lopez was the chief accounting officer of Stanford Financial Group. Plaintiff Kuhrt was the global controller of Stanford Financial Group Global Management, an affiliate of Stanford Financial Group and Stanford International Bank, Ltd.

12.    Plaintiffs are insureds pursuant to the terms of the D&O Policy, the PI Policy and the Excess Policy issued by Underwriters to the Stanford Group. More specifically, Plaintiffs are officers as defined in the Policies and are entitled to a

defense pursuant to the terms of the D&O Policy, the PI Policy and the Excess Policy.

13.     On February 17, 2009, the SEC filed a Complaint against Plaintiffs Holt and Stanford in Case No. 3:09-CV-0298, *SEC v. Stanford International Bank, Ltd., et al.*, in the United States District Court for the Northern District of Texas, Dallas Division (the "SEC Action"). The SEC later sought leave to amend its complaint and add Plaintiffs Kuhrt and Lopez as defendants in the SEC Action, but, to date, that motion has not yet been ruled upon.

14.     Plaintiffs timely submitted a notice of claim to the Underwriters concerning the SEC Action.

15.     On February 26, 2009, Plaintiff Holt was arrested and charged by the DOJ with Obstruction of an Agency of the United Sates, the SEC. On February 27, 2009 and on March 4, 2009, Plaintiff Holt timely submitted additional notices of claims that identified the criminal matter as well.

16.     On June 18, 2009, all four Plaintiffs were indicted in Case No. H-09-CR-0342, *U.S. v. R. Allen Stanford, et al.*, in the Southern District of Texas, Houston Division (the "Criminal Action"). The previous indictment against Plaintiff Holt was dismissed.

17.     Plaintiffs timely notified Underwriters of the Criminal Action.

18.    The Policies provide indemnity coverage for the Stanford Group and their officers and directors, including Plaintiffs. Underwriters agreed in the D&O Policy to "pay, on behalf of the Directors and Officers, Loss resulting from any Claim first made during the Policy Period for a Wrongful Act" A "Claim" means a "written demand for monetary damages," or a "judicial or administrative proceeding initiated against any of the Directors and Officers or the Company in which they may be subjected to a binding adjudication of liability for damages or other relief." "Loss" means "damages, judgments, settlements and Costs, Charges and Expenses . . . incurred by any of the Directors or Officers or the Company." The D&O Policy's definition of "Costs, Charges, and Expenses" provides for payment of reasonable and necessary attorneys' fees incurred in defense of any "Claim."

19.    Underwriters advised Plaintiffs that they would advance "Costs, Charges and Expenses" to them for the SEC Action and the Criminal Action.  In fact, coverage counsel for Underwriters advised defense counsel of billing guidelines and instructed defense counsel on certain vendors to use.  By way of example, on October 30, 2009, counsel for Underwriters wrote to one of the defense counsel and specifically consented to the request by one of the insureds to "incur Costs, Charges, and Expenses in defense of the criminal proceeding . . . ."   Further, on

November 3, 2009, counsel for Underwriters sent billing guidelines to defense counsel.

20.    Counsel for Underwriters[2] subsequently wrote that they "learned for the first time [on June 24, 2009]" that the Receiver[3] "now takes the position that all proceeds under the policies . . . are 'Receivership Assets' as defined by the Court's February 17, 2009 order." Underwriters further advised that "the Receiver has taken the position that his right to the proceeds 'supersedes' the right of the insureds." Because the Receiver had threatened to pursue contempt charges, Underwriters advised that no payments would be made absent a ruling from the U.S. District Court for the Northern District of Texas.

21.    On October 9, 2009, Judge Godbey of the Northern District of Texas (Dallas Division), upon a request for clarification by Plaintiff Holt, assumed without deciding that the insurance policies were an asset of the Receivership Estate and that payment of defense costs from the insurance proceeds was permissible.

22.    On November 16, 2009, the Underwriters issued letters to Plaintiffs. Underwriters acknowledged payment to counsel for the Plaintiffs through August 27, 2009, but *retroactively* declined to extend any coverage for "Costs, Charges, or Expenses" incurred in defending against the SEC Action and the Criminal Action

---

[2] Underwriters, to date, have been represented by Barry A. Chasnoff and Daniel McNeel Lane, Jr. of the law firm Akin Gump Straus Hauer & Feld LLP in San Antonio.

[3] The Receiver, Ralph Janvey, is represented by the law firms of Baker Botts and Thompson & Knight.

after August 27, 2009.   This is so despite the fact that Underwriters had, subsequent to August, 27, 2009, specifically consented to defense counsel incurring Costs, Charges, and Expenses.

23.    In their declination of coverage letter, Underwriters state that they have concluded that the claims against the Plaintiffs are excluded by, among other things, the D&O Policy's "money laundering" and "fraud" exclusions and by the PI Policy's "government claims" and "intentional corporate or business policy" exclusion. Moreover, Underwriters alleges that because coverage does not exist under the D&O Policy and the PI Policy, coverage also does not exist under the Excess Policy.

## V. THE INSURANCE POLICIES

### A.    The D&O Policy

24.    Underwriters issued the D&O Policy to Stanford Financial Group Company, Stanford Group Company and various other Stanford entities for the policy period of August 15, 2008 to August 15, 2009. The D&O Policy pays, among other things, on behalf of the Stanford Group's directors and officers, loss resulting from any claim first made during the policy period for a wrongful act.

25.    Underwriters now contend that exclusions in the D&O Policy preclude payment of defense costs for the SEC Action, the Criminal Action and any other "Claims," as that term is defined in the D&O Policy. Specifically, they claim that

Underwriters shall not be liable to make any payment for loss, including defense costs, resulting from any Claim:

I.      brought about or contributed to in fact by:

      (a)    any dishonest, fraudulent or criminal act or omission by the Directors or Officers or the Company, or

      (b)    any personal profit or advantage gained by any of the Directors and Officers or the Company to which they were not legally entitled

as determined by a final adjudication;

\*\*\*

L.      based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way relating to any act, error or omission in connection with the performance of any professional services by or on behalf of the Company for the benefit of any other entity or person; or

\*\*\*

T.      arising directly or indirectly as a result of or in connection with any act or acts (or alleged act or acts) of Money Laundering or any act or acts (or alleged act or acts) which are in breach of and/or constitute an offence or offences under any money laundering legislation (or any provisions and/or rules or regulations made by any Regulatory Body or Authority thereunder).

Notwithstanding the foregoing Exclusion, Underwriters shall pay Costs, Charges, and Expenses in the event of an alleged act or alleged acts until such time that it is determined that the alleged act or alleged acts did in fact occur. In such event the Directors and Officers and the Company will reimburse Underwriters for such Costs, Charges and Expenses paid on their behalf.

**B. The PI Policy**

26.    Underwriters issued the PI Policy to Stanford Financial Group Company, Stanford Group Company, and various other Stanford entities for the policy period August 15, 2008 to August 15, 2009. The PI Policy provides that Underwriters shall reimburse the insureds for loss resulting from any claim first made during the policy period for a wrongful act in the performance of a professional service.

27.    Underwriters now contend that exclusions in the PI Policy preclude payment of defense costs for the SEC Action, the Criminal Action and any other "Claims," as that term is defined in the PI Policy. Specifically, they claim that Underwriters shall not be liable to make any payment for loss, including defense costs, resulting from any Claim:

> E.    brought about or contributed to in fact by any dishonest, fraudulent or criminal act or omission or any personal profit or advantage gained by any of the Directors, Officers and Employees to which they were not  legally entitled, provided, however, no Wrongful Act shall be imputed to any other person for the purpose of determining the applicability of this Exclusion;
>
> ***
>
> K.    made against any of the Assureds by or at the behest of any federal or state governmental body or governmental agency, except when acting solely in the capacity of a customer or client of the Company or on behalf of a customer or client of the Company;
>
> ***

N.    where, and to the extent that, the Loss by reason of such Claim represents the return by the Assureds of excessive fees, commissions, costs or other charges;

\*\*\*

R.    for any Intentional Corporate or Business Policy.

"Corporate or Business Policy" as used in this Exclusion shall mean any policy which has been approved, condoned, ratified or endorsed by two or more members of the "Assureds' Management" and which results in:

(a)    a financial disadvantage to two or more of the Assured's clients, and

(b)    the Assured making a financial gain to which they were not entitled, whether or not such gain was returned.

The "Assured's Management" shall be deemed to be R. Allen Stanford, James Davis and James Stanford.

S.    arising directly or indirectly as a result of or in connection with any act or acts (or alleged act or acts) which are in breach of and/or constitute an offence or offences under any Money Laundering legislation (or any provisions and/or rules or regulations made by any regulatory body or authority thereunder). . . .

\*\*\*

X.    (a)    arising out of or in connection with any circumstances or occurrences which have been notified to the Insurer on any other insurance affected prior to the inception of this Policy

(b)    arising out of or in connection with any circumstances or occurrences known to the Assured at inception of this Policy which could reasonably be expected to give rise to Loss of more than USD 100,000 under this Policy

Solely for the purposes of knowledge as required by point (b) above, the term "Assured" shall mean:

- 11 -

the first named Assured's General Counsel or Corporate Risk manager.

**C.    The Excess Policy**

28.    Underwriters issued the Excess Policy to Stanford Financial Group Company, Stanford Group Company and various other Stanford entities for the policy period of August 15, 2008 to August 15, 2009. The Excess policy provides that the Underwriters shall indemnify or reimburse or pay on behalf of the assured, any loss or losses first discovered and/or any claim or claims first made against the assured during the period of insurance hereon up to the Excess Policy's limit of liability, but in excess of D&O Policy's and the PI Policy's limits of liability.

29.    Underwriters now contend that terms and conditions in the Excess Policy preclude payment of defense costs for the SEC Action, the Criminal Action and any other "Claims," as that term is defined in the Excess Policy. Specifically, they claim that Underwriters shall not be liable to make any payment for loss, including defense costs, resulting from any Claim because the terms and conditions of the Excess Policy provide as follows:

> 7.    Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers. No amendment to the Policy of the Primary Insurers during the period of this Policy in respect of which the Primary Insures require an additional premium or a deductible shall be effective in extending the scope of this Policy until agreed in writing by the Underwriters.

## VI. CAUSES OF ACTION

### A.   DECLARATORY JUDGMENT

30.   Plaintiffs incorporate herein paragraphs 1 through 28 by reference.

31.   The Declaratory Judgment Act expressly authorizes this Court to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. *See* 28 U.S.C. § 2201. Also, such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. *Id.*

#### 1.   D&O Policy

32.   An actual controversy exists between the Plaintiffs, on the one hand, and Underwriters, on the other, with respect to the rights and obligations under the D&O Policy that Underwriters issued to the Stanford Group. In particular, a dispute exists as to whether Underwriters is obligated to pay "Costs, Charges and Expenses" in connection with the SEC Action, the Criminal Action and any and all other "Claims," as that term is defined in the D&O Policy.

33.   The Plaintiffs seek a declaration that Underwriters are obligated, under the terms of the D&O Policy, to pay "Costs, Charges and Expenses" in connection with the SEC Action, the Criminal Action and any and all other "Claims," as that term is defined in the D&O Policy.

### 2.    PI Policy

34.    An actual controversy exists between the Plaintiffs, on the one hand, and Underwriters, on the other, with respect to the rights and obligations under the PI Policy that Underwriters issued to the Stanford Group. In particular, a dispute exists as to whether Underwriters is obligated to pay "Costs, Charges and Expenses" in connection with the SEC Action, the Criminal Action and any and all other "Claims," as that term is defined in the PI Policy.

35.    The Plaintiffs seek a declaration that Underwriters are obligated, under the terms of the PI Policy, to pay "Costs, Charges and Expenses" in connection with the SEC Action, the Criminal Action and any and all other "Claims," as that term is defined in the PI Policy.

### 3.    Excess Policy

36.    An actual controversy exists between the Plaintiffs, on the one hand, and Underwriters, on the other, with respect to the rights and obligations under the Excess Policy that Underwriters issued to the Stanford Group. In particular, a dispute exists as to whether Underwriters is obligated to pay—upon exhaustion of the underlying policies—"Costs, Charges and Expenses" in connection with the SEC Action, the Criminal Action and any and all other "Claims," as that term is defined in the Excess Policy.

37.     The Plaintiffs seek a declaration that Underwriters are obligated, under the terms of the Excess Policy, to pay "Costs, Charges and Expenses" in connection with the SEC Action, the Criminal Action and any and all other "Claims," as that term is defined in the Excess Policy.

**B.     BREACH OF CONTRACT**

38.     The D&O Policy, the PI Policy and the Excess Policy each set forth contractual obligations on the part of Underwriters to defend the directors and officers of the Stanford Group in connection with "Claims," as that term is defined in the Policies, that are made against the directors and officers and first reported to Underwriters during the policy periods and where no exclusion operates to negate coverage.

39.     Underwriters have breached their insurance contracts by failing to pay "Costs, Charges and Expenses" to the Plaintiffs in connection with the SEC Action and the Criminal Action. In particular, the SEC Action and the Criminal Action fall within the coverage afforded by the Policies and no exclusions apply to negate the payment of "Costs, Charges and Expenses."

**C.     PROMPT PAYMENT OF CLAIMS**

40.     The failure of Underwriters to promptly pay Plaintiffs' "Costs, Charges and Expenses" incurred in the SEC Action, the Criminal Action and any and all other

"Claims," as that term is defined in the Policies, constitutes a violation of Article 5421.051 *et seq.* of the Texas Insurance Code (f/k/a Article 21.55).

41.    Plaintiffs, therefore, in addition to their claim for damages, are entitled to recovery of an 18% penalty and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

## D.    REQUEST FOR EMERGENCY PRELIMINARY INJUNCTION

42.    Pursuant to Federal Rule of Civil Procedure 65(a), Plaintiffs request that this Court issues a preliminary injunction that requires the Underwriters to not only begin paying on claims for fees, expenses and costs already incurred by Plaintiffs but also to continue making payment for fees, expenses and costs to the defense counsel in both the SEC Action and the Criminal Action until such time as the Court makes a final ruling on the merits.

43.    Plaintiffs will suffer irreparable harm if a preliminary injunction is not issued and Plaintiffs have no other adequate remedy at law that can cure the immediate harm that will be done by the non-payment of fees, expenses and costs. Further, the injury that Plaintiffs will suffer outweighs any injury that would be sustained by the Defendants.

44.    Plaintiffs will be able to demonstrate that there is a substantial likelihood that they will succeed on the merits of the coverage case.

45.    The requested injunctive relief will not adversely affect public policy or the public interest.

46.    Plaintiffs request that a hearing on the preliminary injunction be set within a reasonable time of Plaintiffs providing notice to the Underwriters of this request for a preliminary injunction in accordance with the Federal Rules of Civil Procedure.

**E.    ATTORNEYS' FEES**

47.    Plaintiffs engaged the undersigned attorneys to prosecute this lawsuit against Underwriters and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

48.    Plaintiffs pray that they be awarded all reasonable attorneys' fees incurred in prosecuting its causes of action through trial and any appeal pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code and/or Section 542.060 of the Texas Insurance Code.

**VII. JURY DEMAND**

49.    Plaintiffs previously have demanded a jury trial.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, upon final hearing of the case, this Court issue a preliminary injunction, declare and adjudge the contractual obligations of Defendants, and that Plaintiffs recover all damages

from and against Defendants that may reasonably establish by a preponderance of the evidence, and recover attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

By:   /s/ Lee H. Shidlofsky
       Lee H. Shidlofsky
       State Bar No. 24002937
       Federal Bar No. 22026
       E-mail: lee@vsfirm.com

       Alan M. Cohen
       State Bar No. 24057671
       Federal Bar No. 925044
       E-mail: alan@vsfirm.com

       Douglas P. Skelley
       State Bar No. 24056335
       Federal Bar No. 903934
       E-mail: doug@vsfirm.com

       VISSER SHIDLOFSKY LLP
       7200 N. Mopac Expy., Suite 430
       Austin, Texas  78731
       Phone: (512) 795-0600
       Fax: (866) 232-8710
       **ATTORNEYS FOR PLAINTIFFS**
       **LAURA PENDERGEST-HOLT, R.**
       **ALLEN STANFORD, and**
       **GILBERT LOPEZ**

       **- and –**

By:   /s/ Gregg Anderson
      Gregg Anderson
      State Bar No. 011186200
      Federal Bar No. 9032
      TERRY BRYANT, PLLC
      8584 Katy Freeway, Suite 100
      Houston, Texas 77024
      Phone: (713) 973-8888
      Fax: (713) 973-1188
      E-mail: gregg@terrybryant.com
      **ATTORNEYS FOR PLAINTIFF**
      **MARK KUHRT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to each counsel of record. To the extent any such counsel is not registered for such electronic delivery, the foregoing document will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Lee H. Shidlofsky
Lee H. Shidlofsky