IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA PENDERGEST-HOLT, R. ALLEN STANFORD, GILBERTO LOPEZ, JR. and MARK KUHRT<br>Plaintiffs,<br><br>vs.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON AND ARCH SPECIALTY INSURANCE COMPANY,<br>Defendants. | § § § § § § § § § § § § § | CIVIL ACTION NO. 4:09-cv-03712 |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' SECOND AMENDED COMPLAINT

Certain Underwriters at Lloyd's of London and Arch Specialty Insurance Company (collectively "Underwriters" or "Defendants") submit this Motion to Dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and would show:

### *Preliminary Statement*

Complete diversity of citizenship between the parties does not exist, and therefore the Court should dismiss Plaintiffs' Second Amended Complaint ("Complaint") for lack of federal subject matter jurisdiction. Diversity does not exist because one of the defendants is a citizen of Texas—the same state where three of the four Plaintiffs claim citizenship. Moreover, this Court may not exercise supplemental jurisdiction over Plaintiffs' claims because supplemental jurisdiction does not arise where, as here, the Court does not have original subject matter jurisdiction over the suit.

Even if this Court concludes it has federal subject matter jurisdiction, the Complaint should be dismissed because the Honorable David Godbey, U.S. District Judge for the Northern

District of Texas, has asserted jurisdiction over the insurance policies at issue here, and has enjoined Plaintiffs from filing suit relating to those policies in any court other than his. Judge Godbey presides over the pending receivership involving Stanford International Bank and related entities, as well as various civil suits against some of the Plaintiffs in this case. Accordingly, at a minimum, this case should be dismissed with leave to refile in the Northern District of Texas.

## I.  FACTUAL BACKGROUND

### A.  The SEC Sues Stanford, Holt, Kuhrt, and Lopez.[1]

On February 17, 2009, the Securities and Exchange Commission ("SEC") sued Allen Stanford, James M. Davis, Laura Pendergest-Holt, and three related companies, in the Northern District of Texas, Dallas Division, alleging that those defendants had orchestrated a fraudulent, multi-billion dollar investment scheme through a program that sold more than $8 billion in fraudulent certificates of deposit.[2] The SEC subsequently sought leave to amend its complaint to add Plaintiffs Mark Kuhrt and Gilberto Lopez as defendants, but that motion has not yet been ruled upon by the court.[3]

Also on February 17, U.S. District Judge Reed O'Connor signed an order appointing a receiver to manage the affairs of the company defendants named in the SEC Action, and further ordered the seizure of assets in the possession of all of the defendants (the "Receivership Order").[4] The Receivership Order empowered the Receiver to marshal and manage the

---

[1] Unlike other Rule 12 motions to dismiss, under a 12(b)(1) challenge, the trial court is free to consider and weigh evidence to satisfy itself as to the existence of its power to hear the case where the facts at issue are not intertwined with the merits of the plaintiffs' claims and are relevant to the jurisdictional inquiry. *See Garcia v. Copenhaver, Bell & Assoc., M.D.'s, P.A.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997).

[2] Complaint ¶¶ 1-2, No. 3:09-cv-0298, *SEC v. Stanford Int'l Bank et al.* (N.D. Tex. Feb. 17, 2009) (hereinafter "SEC Action").

[3] Motion for Leave to File an Amended Complaint, *SEC Action* (N.D. Tex. Jun. 19, 2009).

[4] Order Granting Motion for Order Appointing Receiver, *SEC Action* (N.D. Tex. Feb. 17, 2009). The Court amended its Order Appointing Receiver on March 12, 2009, but the provisions of the Receivership Order relevant to this Motion remain unchanged. Amended Order Appointing Receiver, *SEC Action* (N.D. Tex. Mar. 12, 2009)

Receivership Estate,[5] and granted the Receiver authority to "take and have complete and exclusive control, possession and custody of the 'Receivership Estate,' which includes, among other things, the assets, monies, securities, and other properties, real and personal, tangible and intangible, of the Defendants."[6] The Receivership Estate includes all of the Receivership Assets, which, according to the Receiver, includes the insurance policies at issue now before this Court. The Receivership Order further compels the Receiver to take "all acts necessary to conserve, hold, manage, and preserve the value of the Receivership Estate, in order to prevent any irreparable loss, damage, and injury to the Estate"[7] and enjoins any payment or expenditure of any asset of the Receivership Estate.[8]

In furtherance of the Northern District's interest in administering and preserving the Receivership Estate, the Receivership Order also enjoins and restrains any person from initiating or continuing any action against the Receivership Estate, or any agents, officers, or employees related to the Receivership Estate, or "which affect the Receivership Assets," *except in the Northern District of Texas, Dallas Division.* The Receivership Order expressly precludes:

> 9.   **Creditors and all other persons** ... from the following actions, **except in this Court** ...
>
> (a) The **commencement or continuation**, including the issuance or employment of process, **of any** judicial, administrative, or other proceedings **against** the Receiver, any of the defendants, the Receivership Estate, or any agent, officer, or

---

(hereinafter, "Receivership Order" refers to the February 17, 2009 Order Appointing Receiver, as amended on March 12, 2009).

[5] The "Receivership Estate" consists of "Receivership Assets" and "Receivership Records." Receivership Order ¶ 2. The Order Appointing Receiver defines "Receivership Assets" as the "assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to the entities), of the Defendants and all entities they own or control." *Id.* ¶ 1.

[6] *Id.* ¶¶ 1, 4.

[7] *Id.* ¶¶ 5(g), 8.

[8] *Id.* ¶ 7.

employee related to the Receivership Estate, arising from the subject matter of this civil action.

...

13.  Defendants, and their respective agents, officers, and employees, and **all persons in active concert or participation with them are hereby enjoined from ... filing or prosecuting any actions** or proceedings which involve the Receiver **or which affect the Receivership Assets ... except with the permission of this Court. Any actions so authorized ... shall be filed in this Court.**[9]

**B.  The United States Institutes Criminal Proceedings Against Stanford, Holt, Lopez, Kuhrt, and CFO James Davis.**

On June 18, 2009, Stanford, Holt, Lopez and Kuhrt were indicted on charges of wire fraud; mail fraud; conspiracy to commit mail, wire, and securities fraud; and, conspiracy to commit money laundering.[10] On June 18, the United States also charged James Davis, the former Chief Financial Officer for Stanford Group Company, with conspiracy to commit mail, wire, and securities fraud; mail fraud; and conspiracy to obstruct an SEC investigation.[11] The United States alleged that a purpose of Davis' and the conspirators' fraudulent scheme and artifice was to "solicit and obtain billions of dollars of investors' funds through false pretenses, representations and promises, all in order to obtain substantial economic benefit for themselves and others."[12]

**C.  Plaintiffs Notice Insurance Claims.**

Underwriters issued a Directors' and Officers' and Company Indemnity Policy, reference 576/MNK558900 (the "D&O Policy"), a Financial Institutions, Crime and Professional

---

[9] *Id.* ¶¶ 9, 13 (emphasis added).

[10] Indictment, *United States v. Stanford et al.*, Crim. No. 09-342 (S.D. Tex. Jun. 18, 2009). Stanford and Holt also face charges of conspiracy to obstruct an SEC investigation and obstruction of an SEC investigation (hereinafter the "Criminal Action").

[11] Information, *United States v. Davis*, Crim. No. H-09-335 (S.D. Tex. June 18, 2009).

[12] *Id.* at 13, 25, 27.

Indemnity Policy, reference 576/MNA851300 (the "PI Policy"), and an Excess Blended Wrap Policy, reference 576/MNA831400 (the "Excess Policy") (collectively, the "Policies") to Stanford Financial Group Company, Stanford Group Company, and their affiliated entities.[13]

Plaintiffs noticed claims to the Underwriters under the Policies relating to the SEC Action and the Criminal Action.[14] In response to these insurance claims, Underwriters reserved all of their rights under the terms, conditions, and exclusions of the Policies, communicating in writing this reservation of rights to each of the Plaintiffs. These reservation of rights letters explain that various terms, conditions and exclusions could affect, exclude and/or preclude coverage under the Policies. In particular, Underwriters reserved their rights under two exclusions contained in the D&O Policy: (1) the money laundering exclusion and (2) the fraudulent, dishonest, or criminal acts exclusion.[15] Subject to their reservations of rights, however, Underwriters paid certain reasonable and necessary legal costs under the D&O Policy incurred by the Plaintiffs in defense of the SEC Action and the Criminal Action.

### D.    The Davis Plea and Allocution.

On August 27, 2009, James Davis entered a guilty plea in the criminal proceedings against him. With his plea, Davis admitted under oath that he, together with Plaintiffs in the instant proceeding, engaged in various criminal acts as part of a massive ponzi scheme.[16] According to Davis' sworn testimony and plea agreement, he and the Plaintiffs falsified financial statements, engaged in bribery, concealed billions of dollars of fraudulent personal loans to Allen

---

[13] Second Amended Compl. ("SAC") ¶¶ 5-7. True and correct copies of the Policies are attached as Exhibits A–C.

[14] SAC ¶ 22.

[15] D&O Policy, Art. IV, cls. I, T. *See* Exh. A.

[16] Plea Agreement, *United States v. Davis*, Crim. No. 09-335 (S.D. Tex. Aug. 27, 2009).

Stanford, and executed bogus real estate transactions to artificially inflate the value of Stanford International Bank's assets.[17]

### E.   The Northern District of Texas' Injunctive Orders Apply to the Claims Seeking Relief Related to the Policies.

#### 1.   Stanford Pursues Policy Proceeds in the United Kingdom in Violation of the Receivership Order.

On September 22, 2009, Allen Stanford filed an emergency application in the English High Court of Justice seeking reimbursement under the Policies for defense costs.[18] On September 27, 2009, the Receiver requested that the court enjoin the application and require Stanford to withdraw his application.[19] Underwriters joined that request.[20] On September 28, Judge Godbey confirmed his court's jurisdiction over claims involving the Policies or their proceeds and ordered Stanford to withdraw his UK application. Judge Godbey then specifically enjoined Stanford and anyone acting in concert with him, including his attorneys, from taking steps to seek relief relating to the Policies in any other forum. Judge Godbey stated:

> **The Court finds that it has jurisdiction over Defendant Allen Stanford, as well as the insurance policies at issue** ….It appears that Stanford is purporting to seek relief before another tribunal relating to the Policies. Such actions by Stanford both violate the terms of this Court's prior orders, as well as threaten to interfere with this Court's jurisdiction over the Policies.
>
> **The Court therefore enjoins Allen Stanford and anyone acting in concert with him, including his attorneys, from taking further steps to seek relief in any court other than this relating to the Policies. Stanford is ordered**

---

[17] *Id.*

[18] *See* Receiver's Request for Order Enforcing Injunction and Requiring Allen Stanford to Immediately Withdraw Emergency Application in the English Courts Concerning Insurance Proceeds, *SEC Action* (N.D. Tex. Sept. 27, 2009).

[19] *Id.*

[20] Certain Underwriters at Lloyd's of London's Joinder in Receiver's Request for Order Enforcing Injunction and Requiring Allen Stanford to Immediately Withdraw Emergency Application in the English Courts Concerning Insurance Proceeds, *SEC Action* (N.D. Tex. Sept. 28, 2009).

> **immediately to take all steps reasonably necessary to withdraw any request for relief relating to the Policies from any other court ....**[21]

In no uncertain terms, Judge Godbey pronounced that disputes concerning the Policies may only be brought in the Northern District of Texas, effectively giving it ***exclusive jurisdiction*** over such disputes. Judge Godbey's Order also made clear that the Receivership Order's injunctive provisions apply to *any* actions relating to the Policies.

    2.    <u>On October 9, 2009, the Northern District of Texas Reasserted Its Jurisdiction Over the Policies.</u>

On June 24, 2009, the Receiver asserted that the proceeds of the Policies are assets of the Receivership Estate. On June 30, 2009, Holt filed an expedited motion requesting that the court clarify whether the Receivership Order applied to the insurance policies' proceeds and asking the court to authorize payment of her defense costs.[22] Holt's motion asked Judge Godbey to find that the proceeds of the D&O Policy did not constitute property of the Receivership Estate and that Underwriters could pay defense costs submitted by her under the Policies.[23] Alternatively, Holt asked the court to permit the payment of defense costs to her counsel.[24] Stanford joined Holt's motion on July 6, 2009.[25]

In resolving Holt's expedited motion, the Northern District exercised its equitable discretion to permit Underwriters to pay certain costs incurred by Plaintiffs in defending their

---

[21] Order Granting Receiver's Request for Order Enforcing Injunction and Requiring Allen Stanford to Immediately Withdraw Emergency Application in the English Courts Concerning Insurance Proceeds, *SEC Action* (N.D. Tex. Sept. 28, 2009).

[22] Defendant Laura Pendergest-Holt's Expedited Motion for Clarification that Receivership Order Does Not Apply to D&O Policy Proceeds, or, Alternatively, for Authorization of Disbursement of D&O Policy Proceeds, and Brief in Support, *SEC Action* (N.D. Tex. Jun. 30, 2009).

[23] *Id.*

[24] *Id.*

[25] Defendant R. Allen Stanford's Notice of Joinder in Defendant Laura Pendergest-Holt's Motion for Clarification and Demonstration of the Existence of Personal Assets Unrelated to and Untainted by the Alleged Fraud, *SEC Action* (N.D. Tex. Jul. 6, 2009).

various lawsuits and criminal proceedings, subject to the terms, conditions, and exclusions of the Policies. In that October 9, 2009 Order, however, Judge Godbey stated that no such payments were required.[26] In explaining his decision, Judge Godbey emphasized his intention to retain exclusive jurisdiction over the Policies and claims for the proceeds of the Policies, writing,

> Today the Court holds only that its prior orders do not bar Lloyd's from disbursing policy proceeds to fund directors' and officers' defense costs in accordance with the D&O policies' terms and conditions. The Court does not, however, hold that any defendant is entitled to have its defense costs paid by D&O proceeds. Lloyd's reminds the Court that Lloyd's may ultimately deny coverage for even the individual directors' and officers' claims as barred by various policy exclusions. The Court also does not today authorize Lloyd's to pay any claims other than those for defense costs. ***Whether and how any successful claims within policy coverage will be paid is a matter the Court can address if and when that issue is ripe.***[27]

By this Order, the Court indicated for the third time its clear intent to retain control over claims to Policy proceeds. Indeed, Plaintiffs acknowledge this fact in their Complaint.[28]

On August 24, 2009, Holt and Lopez separately filed motions in the Criminal Action requesting this Court order Underwriters to pay their legal fees.[29] On November 13, 2009, Holt's attorneys urged this Court to set those motions for hearing. This Court conducted a hearing on the motions on November 17, 2009.[30] None of the Plaintiffs apprised this Court of Judge Godbey's September 28, 2009, Order enjoining Stanford and anyone acting in concert with

---

[26] Order, *SEC Action* (N.D. Tex. Oct. 9, 2009).

[27] *Id.* (footnote omitted) (emphasis added).

[28] SAC ¶ 21.

[29] *See* Motion for Payment of Fees or in the Alternative, Stay of Criminal Proceedings, *United States v. Stanford et al.*, Crim. No. 09-342 (S.D. Tex. Aug. 24, 2009) (Holt's motion); Request for a Court Order Requiring Payment of Legal Fees, or in the Alternative, for a Stay of His Criminal Case, *United States v. Stanford et al.*, Crim. No. 09-342 (S.D. Tex. Aug. 24, 2009).

[30] At Judge Hittner's request, counsel for Underwriters attended the November 17, 2009 hearing on Holt's motion as "invited nonparties." Underwriters' counsel urged that "by acceding to the requests of a United States District Judge to be here today, [they were] not agreeing that [Underwriters] are part of [that] case or that the [criminal court] has jurisdiction." The Court responded "You're not making an official appearance." Transcript of Nov. 17, 2009 Hearing at 67, *United States v. Stanford et al.*, Crim. No. 09-342 (S.D. Tex. Nov. 17, 2009).

Stanford from seeking relief relating to the Policies outside of the Northern District. This Court has not ruled on the motions filed by Holt and Lopez in August.

    3.    <u>Insurance Coverage Issues Are Already Pending Before the Northern District of Texas.</u>

On November 18, 2009, Underwriters filed an Original Complaint for Declaratory Judgment in the Northern District of Texas, Dallas Division, seeking a declaration that, among other things, Plaintiffs are not entitled to coverage under the Policies.[31] Underwriters noted in their Complaint that enjoining litigation in other jurisdictions was necessary both to preserve that court's jurisdiction over the Policies and to maintain the orderly administration of the Receivership Estate and Receivership Assets.

**F.**     <u>**Underwriters Communicate Denial of Claims to the Plaintiffs. This Action Follows.**</u>

On or about November 16, 2009, Underwriters notified Plaintiffs that their insurance claims were being denied and that Underwriters would make no payments for Costs, Charges or Expenses incurred by Plaintiffs in connection with the SEC Action or the Criminal Action after August 27, 2009.[32] Underwriters denied the insurance claims in accordance with the money laundering and the fraud, dishonest, or criminal acts exclusions set forth in the D&O Policy, as well as the government claims and intentional corporate or business policy exclusions under the PI Policy.[33] Further, Underwriters' denial letter explained to Plaintiffs that coverage was barred under the excess policy because the underlying D&O and PI Policies excluded coverage.[34]

---

[31] *Certain Underwriters at Lloyd's of London v. Stanford*, No. 3:09-cv-02206 (N.D. Tex. Nov. 18, 2009).

[32] SAC ¶ 22.

[33] *Id.* ¶ 23. It should be noted that neither the D&O Policy nor the PI Policy imposes a duty to defend on Underwriters. In fact, the PI Policy grants Underwriters discretion to refrain from reimbursing defense costs until the final disposition of any claim. Exh. B. PI Policy, Art. IV, cl. F.

[34] *Id.*

On November 17, 2009, Holt filed this suit seeking coverage under the Policies. Three days later, Stanford, Lopez and Kuhrt joined the action as Plaintiffs, and, along with Holt, filed a First Amended Complaint. On December 1, 2009, Plaintiffs filed a Second Amended Complaint seeking an emergency preliminary injunction to compel Underwriters to pay fees, expenses and costs incurred by Plaintiffs in the SEC and Criminal Actions.[35]

## II. ARGUMENTS AND AUTHORITIES

Plaintiffs' Second Amended Complaint must be dismissed because this Court lacks federal subject matter jurisdiction over this case. The Plaintiffs premise subject matter jurisdiction on the existence of complete diversity of citizenship between the plaintiffs and defendants under 28 U.S.C. § 1332. However, Plaintiffs cannot sustain their burden to establish that complete diversity exists because one of the defendants to this action is a citizen of Texas, as are three of the four Plaintiffs.

The Plaintiffs also assert that this Court may exercise supplemental jurisdiction over their state law claims under 28 U.S.C. § 1367. However, no basis exists for the exercise of supplemental jurisdiction absent the existence of original subject matter jurisdiction in the first instance, and there is no original subject matter jurisdiction because there is no diversity. Because this Court lacks subject matter jurisdiction, it cannot consider the merits of this case. *See Ziegler v. Champion Mort. Co.*, 913 F.2d 228, 229 (5th Cir. 1990) (subject matter is a threshold issue that must be determined before the court reaches the merits of the case).

Finally, this Court also should dismiss this lawsuit because it violates Judge Godbey's injunctions. The Northern District of Texas has asserted jurisdiction over the Policies, and that

---

[35] Underwriters notified counsel for the Plaintiffs that their pursuit of these proceeds outside of the Northern District of Texas violates that Court's Receivership Order and subsequent order enjoining Allen Stanford from pursing the proceeds of these insurance policies anywhere outside of that Court. Underwriters then filed a motion to enforce order in the Northern District of Texas, which is currently pending before Judge Godbey.

court has construed its own Receivership Order to enjoin Plaintiffs from seeking relief relating to the Policies in any other court.

A. **This Court Lacks Diversity Jurisdiction.**

In their Second Amended Complaint, Plaintiffs allege that this Court has subject matter jurisdiction over this proceeding as a result of the alleged existence of diversity jurisdiction under 28 U.S.C. § 1332. Federal courts have limited subject matter jurisdiction and are empowered to hear only those cases authorized by federal statute, the United States Constitution, or a U.S. Treaty. *See Kokkenen v. Guardian Life Ins. Co.*, 551 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001). Under 28 U.S.C. § 1332(a) the Court's exercise of jurisdiction is proper only if each plaintiff has a different citizenship from each defendant and the amount in controversy exceeds $75,000. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988). A federal court cannot exercise jurisdiction if "one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003).

The party asserting subject matter jurisdiction in response to a Rule 12(b)(1) motion to dismiss bears the burden to prove the existence of complete diversity. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[T]he basis on which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *NL Indus., Inc. v. Onebeacon Am. Ins. Co.*, 435 F. Supp. 2d 558, 561 (N.D. Tex. 2006) (quoting *Getty*, 841 F.2d at 1259). Plaintiffs cannot meet their burden in this case because diversity of citizenship does not exist.

Defendant Certain Underwriters at Lloyd's of London is not an insurance company, but rather a self-regulating entity that operates as an insurance market. *Id.* at 563 (citing *Corfield*, 355 F.3d at 858). The Lloyd's entity provides a market for the buying and selling of insurance

risk among its members who collectively make up Lloyd's. *Id.* Thus, a policyholder insures *at* Lloyd's but *not with* Lloyd's. *Id.* The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. *Id.* A "Name" becomes personally liable for his proportionate share of the loss on a particular policy by subscribing to the policy as an underwriter. *Id.*

Most Names do not actively participate in the insurance market on a day-to-day basis. *Id.* Rather, the business of insuring risk at Lloyd's is carried on by groups of Names joined as "Syndicates." *Id.* In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a "Syndicate" which will in turn subscribe to policies on behalf of all Names in the Syndicate. *Id.*

Federal courts recognize that although the Names of each underwriter belonging to a Lloyd's Syndicate do not appear on the insurance contract issued to an insured, each Name is, nevertheless, a party to that insurance contract, both for purposes of liability and for determining diversity of citizenship when suit is brought on behalf of or against the associate or syndicate. *Id.* at 563-64. When a plaintiff sues "certain underwriters at Lloyd's of London" or "certain London Market insurance companies," the "citizenship of each individual Underwriter subscribing to the London Insurers' policies is relevant" and must be considered when determining whether complete diversity of citizenship exits. *Id.* at 562; *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding unincorporated association is considered to have the citizenship of its members); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 882 (5th Cir.1993) (finding that members of a Lloyd's insurance association are the

association's underwriters). Consequently, if any of the names subscribing to the Policies share the same state of citizenship with any of the Plaintiffs, diversity of citizenship does not exist.

Plaintiffs cannot establish the existence of complete diversity of citizenship in this case. Syndicate 623 is one of the underwriting syndicates subscribing to the D&O Policy, which is one of the Policies at issue in this dispute. Thus, each of the Names that comprise Syndicate 623 is a defendant in this proceeding. One of the Names in Syndicate 623 is a Texas citizen.[36] Accordingly, a defendant in this proceeding is a citizen of Texas for purposes of determining whether complete diversity exists under 28 U.S.C. § 1332. In turn, three of the Plaintiffs—Allen Stanford, Gilbert Lopez, and Mark Kuhrt—are also Texas citizens.[37] Because at least one Defendant and three Plaintiffs are citizens of Texas, complete diversity does not exist, and this Court does not have subject matter jurisdiction over this action. The Court should grant Underwriters' Motion to Dismiss. *Ziegler*, 913 F.2d at 229 (5th Cir. 1990).

### B. This Court Cannot Exercise Supplemental Jurisdiction Under 28 U.S.C. § 1367 Because There Is No Original Subject Matter Jurisdiction.

Neither can Plaintiffs rely on their allegation of supplemental jurisdiction to maintain this lawsuit in this Court. 28 U.S.C. § 1367, the statute that authorizes supplemental jurisdiction, requires that a federal court have *original* jurisdiction over an action before it can exercise supplemental jurisdiction over any claims that do not independently give rise to federal jurisdiction. 28 U.S.C. § 1367(a); *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 558 (2005). Since this Court does not have original subject matter jurisdiction over this action, supplemental jurisdiction cannot exist.

---

[36] Decl. of Sian Coope ¶ 6, Exh. E. Because the facts relevant to the question of whether subject matter jurisdiction exists is not intertwined with the merits of Plaintiffs' claims, the Court is free to consider evidence outside the pleadings. *Torres-Negron v. J&N Records, LLC*, 504 F.3d at 151, 163 (1st Cir. 2007) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)).

[37] SAC ¶¶ 2-4.

Furthermore, the separate Criminal Action pending in this Court does not provide a basis for the Court to exercise supplemental jurisdiction.[38] Underwriters are not parties to the Criminal Action. This action is separate and distinct from the Criminal Action, and there is no authority that permits the extension of federal subject matter jurisdiction that may exist in one proceeding to a separate and distinct case involving separate and distinct parties.[39] Therefore, there is simply no basis upon which this Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367. *See Exxon Mobil Corp*, 545 U.S. at 560 (section 1367(b) allows the court to exercise supplemental jurisdiction over state law claims against new parties who are not diverse from plaintiffs only where the court has diversity jurisdiction over the original parties).

C. **The Northern District of Texas First Asserted Jurisdiction Over the Policies and Enjoined Plaintiffs From Seeking Relief On the Policies Outside of the Northern District.**

The Court also should dismiss this lawsuit because it violates repeated orders of the Northern District of Texas that enjoin Stanford and others from filing any actions concerning disputes regarding the Policies in any court other than the Northern District of Texas.[40] On March 12, 2009, Judge Godbey enjoined the defendants in the SEC Action, including their agents, officers, employees, and "all persons in active concert or participation with them," from "filing or prosecuting any actions or proceedings which involve the Receiver or which affect the Receivership Assets . . . except with the permission of this Court. Any actions so authorized to

---

[38] Of course, Plaintiffs make no claim that the Criminal Action against them somehow creates federal subject matter jurisdiction in civil claims they bring against others.

[39] Indeed, courts have overwhelmingly rejected attempts by criminal defendants to use federal question jurisdiction emanating from criminal proceedings as a basis to assert civil claims within the criminal action. *See Stein v. KPMG*, 486 F.3d 753, 763-64 (2d Cir. 2007); *U.S. v. Wittig*, 512 F. Supp. 2d 1186, 1192 (D. Kan. 2007); *U.S. v. Polishan*, 19 F. Supp. 2d 327 (M.D. Pa. 1998).

[40] The Northern District of Texas, Dallas Division has *in rem* subject matter jurisdiction over receivership property. *In re Crown Vantage*, 421 F.3d 963, 970-71 (9th Cir. 2005).

determine disputes relating to Receivership Assets . . . shall be filed in this Court."[41] Despite this, Allen Stanford brought an action on the Policies in the United Kingdom.[42] When apprised of this filing, Judge Godbey re-asserted jurisdiction over the Policies and "enjoin[ed] Allen Stanford and anyone acting in concert with him, including his attorneys, from taking further steps to seek relief in any court other than this relating to the Policies."[43] Plaintiffs here are making the same effort as Stanford did in the English proceedings, and thus are similarly violating Judge Godbey's orders.

The Northern District of Texas has a continuing power to supervise and modify these injunctions. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.3d 403, 407 (5th Cir. 1971). For this reason, this Court should not exercise jurisdiction over this dispute. The Fifth Circuit has held that when another federal court

> is confronted with an action that would involve it in a serious interference with or usurpation of this continuing power, considerations of comity and orderly administration of justice *demand* that the nonrendering court should decline jurisdiction and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there.

*Id.* at 408 (quoting *Sys. Fed'n No. 91 Ry. Employees' Dept., AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961)) (emphasis added). This Court should refrain from taking any action pertaining to the Policies and should defer all such matters to the Northern District of Texas because it cannot exercise jurisdiction without effectively nullifying the Northern District's injunctions. *See id.* (reversing district court for exercising jurisdiction over dispute where such exercise effectively prevented enjoining court from modifying its injunction). Furthermore, dismissal of Plaintiffs' suit does not preclude Plaintiffs from asserting claims against Underwriters for the Policies'

---

[41] Amended Order Appointing Receiver, *SEC Action* (N.D. Tex. March 12, 2009).

[42] Order, *SEC Action* (N.D. Tex. Sept. 28, 2009).

[43] *Id.*

proceeds. In the Northern District of Texas, Underwriters filed a complaint seeking a declaration that Plaintiffs are not entitled to coverage under the Policies, and Plaintiffs can assert their present claims in that suit as counterclaims. Thus, this Court should dismiss Plaintiffs' lawsuit.

### *Conclusion*

Underwriters' Motion to Dismiss should be granted.

Respectfully submitted,

By: /s/ Barry A. Chasnoff
Barry A. Chasnoff (SBN 04153500)
bchasnoff@akingump.com
Attorney in Charge
Daniel McNeel Lane, Jr. (SBN 00784441)
nlane@akingump.com
Rick Rosenblum (SBN 17276100)
rrosenblum@akingump.com
San Antonio, Texas 78205
Phone: (210) 281-7000
Fax: (210) 224-2035

Attorneys for Certain Underwriters at Lloyd's of London and Arch Specialty Insurance Company

### **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document have been served on all known counsel of record via the Court's electronic filing system this ___ day of December, 2009.

/s/ Barry A. Chasnoff
BARRY A. CHASNOFF