IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LAURA PENDERGEST-HOLT, R. ALLEN STANFORD, GILBERT LOPEZ, JR. and MARK KUHRT, <br><br>　　*Plaintiffs*, <br><br> V. <br><br> CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON and ARCH SPECIALTY INSURANCE COMPANY, <br><br>　　*Defendants.* | § § § § § § § § § § § § § § § § CIV. ACTION NO. 4:09-cv-03712 |

## AFFIDAVIT OF DR. KENNETH EUGENE LEHRER

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| THE COUNTY OF HARRIS | § |

Before me, the undersigned notary, on this day personally appeared Dr. Kenneth Eugene Lehrer, who being by me first duly sworn did depose and say:

1.  "My name is Dr. Kenneth Eugene Lehrer, I am over the age of 21 years, am under no legal disability, and am fully competent to make this affidavit. The matters appearing herein are true and correct of my own personal knowledge.

2.  I hold four (4) degrees from New York University ("NYU"), including a Bachelor of Science degree in Finance (B.S. - 1967), a Masters in Business Administration degree in Banking (MBA - 1969), a Master of Arts degree in Economics (M.A. - 1972), and a Doctorate in Urban Economics (DPA - 1980).



*In the United States District Court for the Southern District of Texas*
*Affidavit of Dr. Kenneth Eugene Lehrer - June, 2010*
*Continued ...../.....*

*Page 2.*

3. I am the holder of a Texas General Real Estate Appraisers License (License No. TX-1337797-G) and the holder of a Texas Real Estate Brokers License (License No. 0256992). I am also registered with the Securities and Exchange Commission as an Investment Advisor under the 1940 Investment Advisors Act.

4. I am a member of the following organizations:

   National Association of Business Economists,
   American Academy of Economic and Financial Experts,
   American Law and Economics Association,
   Houston Business Economists,
   National Association of Forensic Economists,
   American Economic Association,
   North American Economics and Finance Association,
   Southern Economic Association,
   Western Economic Association, and
   Finance Club and Money Marketeers, both affiliated with New York University.

5. I am presently a member of the Board of Directors and the Senior Economist for Aztec Oil and Gas, Inc., a publicly traded corporation and have served Aztec Oil & Gas in a number of other capacities since, 2005.

6. During the course of my business career that commenced in June 1970, I have served as a banking officer at Bankers Trust Company, a significant commercial bank in New York City; have been an officer and corporate director for numerous companies engaged in the overall stream of business and commerce; served as a member of the Grand Jury of the State of New York; served as Chairman of the Board of Directors of four (4) Savings and Loans for the Federal Home Loan Bank of Dallas (Dallas, Texas) that had been declared insolvent and placed under the care and operation of the FHLBB and other organizations of the United States Federal Government and for approximately twenty years (1984 – 2002) I also served as an Adjunct Professor of Finance at the University of Houston, Graduate School of Business Administration on a continuing basis. I presently serve as an Adjunct Professor of Finance and Economics at the University of Phoenix (Houston Campus).

*In the United States District Court for the Southern District of Texas*
*Affidavit of Dr. Kenneth Eugene Lehrer - June, 2010*
*Continued ..../.....*

Page 3.

7. I am a practicing economist who specializes in the preparation of institutional reports, real estate studies and business valuations that includes – business valuations, fairness opinions, advisory opinions, market and feasibility analysis, loan presentations for financial institutions, investment analysis and business plans / presentations in the financial, real estate, banking and economic areas. Approximately 2/3$^{rds}$ of my time is spent on non-litigation activities.

8. I have performed a significant number of financial / banking / real estate / economic / corporate analysis matters (non-litigation) and litigation assignments such as the one being undertaken and performed in the present case.

9. I have been an expert witness in approximately 1,600 cases in the State of Texas and throughout the nation in State and Federal District Courts over the past twenty seven (27) years concerning issues involving economics, business formations, contractual disputes, banking, real estate and real estate development, corporate securities and finance, fraud issues, lost profits, due diligence analysis, standards of care in banking, finance, securities, negotiable instruments and other related financial matters. I have direct personal and expert personal knowledge, training and experience in the analysis and operation of commercial banks, savings and loans, real estate operations and development organizations, corporate financial analysis and securities / negotiable instruments in the overall stream of business and commerce in the United States since 1970.

10. The undersigned has been requested to read, review and analyze a wide variety of data, documents and invoices in regard to services provided to the Stanford Group of Companies and R. Allen Stanford as **both** an individual and shareholder of Stanford Financial Group, Inc., Stanford International Bank, Ltd. and Stanford Venture Capital Holdings by the law firm of Akin Gump over a prolonged period of time, of at least a decade.

11. In performing and over the course of the assignment, the undersigned read, reviewed, analyzed and correlated a large (at least 5 bankers boxes) of documentation, data, invoices and accounting records that was supplied via Court Order to the Stanford Defense Team, headed by Robert S. ("Bob") Bennett, Esq. and consisting of many other legal and legal support individuals.

*In the United States District Court for the Southern District of Texas*
*Affidavit of Dr. Kenneth Eugene Lehrer - June, 2010*
*Continued ...../.....*

*Page 4.*

12. The supplied documentation focused on a number of significant and complex corporate transactions including and especially - The Stanford 20/20 Cricket Tournament (2007-2008); American Samoa Telecom, LLC. (2002-2003); AST Telecom, LLC (2003); Blue Sky Communications, Inc. (2002-2003); Telecom Wireless Solutions, Inc. (2002-2003); and Communications International Corp. (2003).

13. The read, reviewed and analyzed documentation clearly reveals that the Attorneys and legal Firms who undertook the preparation and finalization of the documentation for the various transactions and investments had solid knowledge, understanding and involvement of the various transactions AND knew who their clients were, namely a blend or combination of R. Allen Stanford (an individual) and corporate entities of the Stanford Financial Group. This is evidenced by the type of final documentation they prepared and the classifications of the prepared documents for wide range of corporate clientele per transaction, namely individuals, corporate investors and lenders, etc. Examples of the complex and integral documentation supplied by Akin Gump and read and reviewed by the undersigned include, amongst others –

   Qualified Public Offering Documentation
   Voting Agreements
   Asset Purchase Agreements
   Security Interest Agreements
   Escrow Agreements
   Documentation involving the SEC Act of 1933
   Representations and Warranties of Sellers and Buyers
   Management Agreements
   Licensing Agreements
   Co-Sale and First Refusal Agreements

14. In addition to the *prima facia* legal contexts of the various documentation, an overall review of the files and documentation further reveals the Attorneys and Law Firms, such as Akin Gump (from their billing records) who prepared and worked

*In the United States District Court for the Southern District of Texas*
*Affidavit of Dr. Kenneth Eugene Lehrer - June, 2010*
*Continued ...../.....*

Page 5.

on the documentation had to have a clear understanding and perception of the business transactions and their relationship and representation (dual or joint) of R. Allen Stanford and the Stanford Group of Companies. In many of these instances, the Attorneys and law firms interacted with each other and a significant number of firms such as – Fleischman & Walsh; Donelan, Cleary, Wood and Maser, various offices of Akin Gump and various legal divisions and entities of the United States Federal Government.

In order for such interaction amongst attorneys to have any meaning and viability, the corresponding Attorneys have to understand the basics of the transactions and be able to respond and reply in a meaningful manner, thus clearly revealing their knowledge, structuring and representation of different clients in the various transactions. Several of these Attorney replies also include analysis of associated Court opinions, thus further supporting and evidencing their knowledge of the transactions, varied representations and the underlying ingredients.

15. The documentation, especially the billing records, further supports the fact that the participating Attorneys would have to be fully informed based upon the large number of highly compensated individuals who both individually and on a "team basis" are billing their time, talents and efforts to Stanford Transactions. If only one (1) or two (2) attorneys were involved and billing for their efforts, then it could be possible for these very few attorneys to be slightly delinquent and be uninformed. However, when billing records denote a substantial number of well compensated individuals are involved over long periods of time, then via their own interaction and exchange they have to be very informed. The list of Akin Gump attorneys who participated in one or more of the many Stanford transactions includes -

       Michael Anthony, Esq.
       Scott Banard, Esq.
       Roger Cepeda, Esq.
       Mary O'Conner, Esq.
       Larry Greenberg, Esq.
       Orrin Harrison, Esq.
       Lester Hewitt, Esq
       Erica McGrady, Esq.
       Tony Nunes, Esq.
       Rick Rubin, Esq.
       Fadi Samman, Esq.
       Tatman R. Savio, Esq.

*In the United States District Court for the Southern District of Texas*
*Affidavit of Dr. Kenneth Eugene Lehrer - June, 2010*
*Continued ..../.....*

Page 6.

        Wynn Segall, Esq.
        Michael Simmons, Esq.
        John Tang, Esq.
        Jason Tankel, Esq.
        Joseph Tiano, Esq.
        Michael Wilson, Esq.

Note is further made of the fact that these individuals are encouraged to interact to produce to the highest level of performance for the client via the data listed on the website of Akin Gump itself. Said website data denotes –

"Our **team** (emphasis added) of litigators, dealmakers, and policy lawyers and advisors collaborate with a single goal ..."

and the website goes on to add -

"The mission of Akin Gump - the reason this firm exists - is to advise our clients as they choose the road on which they will embark and to assist them in negotiating the turns and obstacles between them and their goals."

16.    In addition to the legal contents of the documentation that in and of themselves exhibits a solid understanding of the transactions the underlying primary ingredients and knowledge of the parties (more than one) they are representing, from an Economic and Financial point of view the documentation also reflects a solid grasp and understanding of the various transactions. This is evidenced by the fact that the Stanford Group of Companies is comprised of over 65 entities of varying legal structures and formations.

Since most of the transactions are extremely complex, in order for them to be viable enterprises and fit into the economic / financial structure of the overall enterprise, those preparing the documentation would have to clearly know (as suggested by the website as quoted above) and understand the essential reasons and components of each transaction or otherwise those preparing the documentation would be creating ventures that are either "useless", doomed to failure or conflicting with others in the overall organizational structure. Thus, via careful analysis of the documentation, ventures such as those in the Stanford Files consist of a solid blending of legal, corporate and economic ingredients, all of

Case 4:09-cv-03712   Document 166-9   Filed in TXSD on 07/02/10   Page 7 of 10

*In the United States District Court for the Southern District of Texas*
*Affidavit of Dr. Kenneth Eugene Lehrer - June, 2010*
*Continued ...../.....*

Page 7.

which in order to be viable and contributory <u>have to be known</u> to and / or reviewed by the legal sector.

17. In addition to our "formal structured" government, the Administrative sector of our national government has grown substantially since the end of the Second World War. This significant structure sometimes referred to as the "headless 4th branch of the Federal Government" consists of some very influential and powerful organizations not envisioned by the Founding Fathers, such as the – SEC, IRS, FBI, CIA, FAA, FTC and many others of similar nature, standing and structure.

Since the Stanford Group of companies operated over a vast spectrum of areas, many of the Administrative Agencies (also referred to as the "Alphabet Boys") denoted above (and others) were involved in or had to pass judgment on the applications of the various corporate ventures, enterprises and individuals (such as R. Allen Stanford himself) involved in and with the Stanford Group of companies. In order for these various and varied ventures to obtain an agency's "seal of approval" (as when necessary) the party creating the document, namely in one or more instances the attorneys at Akin Gump needed to be fully informed of the enterprise, and it members (which often included R. Allen Stanford as an individual) and its structure when submitting an application to a specific Administrative agency or such application(s) would have been rejected or denied.

18. Correlation and Integration of the legal output and the legal billing records (as supplied) clearly denotes that over a prolonged period of time it was the Akin Gump Law firm who advised, prepared and documented many of the major transactions undertaken by <u>both</u> R. Allen Stanford and the Stanford Group of Companies. If this was not the case, than the Stanford parties who compensated the Akin Gump law firm were clearly paying for services and talents not provided. As noted in the Watergate proceedings - "follow the money".

19. Note is also made of the fact that the undersigned as well as many of the individuals with whom the undersigned interfaces at the Bennett Law Firm have no real way of verifying that <u>ALL of the records and output</u> of the Akin Gump law firm in regards to either R. Allen Stanford and / or the Stanford Group of Companies were actually produced to the Bennett Law Firm. This is based upon the fact that R. Allen Stanford is not present to verify and pass judgment upon the

*In the United States District Court for the Southern District of Texas*
*Affidavit of Dr. Kenneth Eugene Lehrer - June, 2010*
*Continued ...../.....*

Page 8.

documentation produced and the Akin Gump law firm is **presently** in an adverse position to the Bennett Law Firm. As such, by limiting the amount of documents that have been provided, especially if such "other documents" would support and / or reinforce their involvement(s) and significant representation(s) of R. Allen Stanford and the Stanford Group of companies, a full and more complete analysis cannot be undertaken and is prevented.

20. The corporate documentation clearly reveals that R. Allen Stanford as an individual was the 99.0+% owner of Stanford Financial and Stanford Group Holdings. As such, when a transaction was being undertaken or structured, it is extremely easy for the funds and / or position of R. Allen Stanford (an individual) and the funds and / or position of one or more of the Stanford Group of Companies to be or become comingled and or intertwined. Since there were no independent shareholders to report to or account for, it is highly unlikely that at all times, without any doubt or confusion that the law firm of Akin Gump knew exactly whom they were representing and the exact source of the Stanford funds. In addition, in a situation where one individual is a super majority major shareholder, the concept of "piercing the veil" often prevails in regard to significant transactions.

Hence, funds from Stanford Financial can also belong to R. Allen Stanford and funds of R. Allen Stanford could be part of Stanford Financial. This dual combining and comingling of funds is also evidenced by legal representation. This based upon the fact that there were **NO** other law firms, NONE denoted as representing any other Stanford personal or private entities and thus Akin Gump supplied and fulfilled the dual representational role for both R. Allen Stanford and the Stanford Group of Companies.

Based upon the above outlined and reviewed legal output of Akin Gump and the billing records of Akin Gump, the undersigned, based upon his personal and long standing (40 years) working knowledge of deals and ventures, background and education easily and fully concludes that the law firm of Akin Gump was at all time working for and representing an intermingled and / or comingled combination of R. Allen Stanford, an individual, and the Stanford Group of companies. To state otherwise would clearly contradict the generally accepted and relied upon structure and implementation for private equity and capital in the United States in recent decades, namely since the growth of private equity and venture capital fundings.

Case 4:09-cv-03712   Document 166-9   Filed in TXSD on 07/02/10   Page 9 of 10

*In the United States District Court for the Southern District of Texas*
*Affidavit of Dr. Kenneth Eugene Lehrer - June, 2010*
*Continued ...../.....*

Page 9.

21. In addition to and after the undersigned conducted and completed his own independent investigation and analysis of the above noted and outlined matters, the undersigned personally visited with R. Allen Stanford at the Houston Federal Detention Center and personally read and reviewed the affidavits of Robert Allen Stanford and James Allen Stanford.

Correlating and integrating the valuable information the undersigned obtained on a direct and personal basis from an interview of Robert Allen Stanford, (even under the very adverse conditions of the event) and the two (2) affidavits along with the information contained in same and reviewed by the undersigned **both** confirms the independent findings of the undersigned from his own readings and analysis of the specific documentation turned over by the law firm of Akin Gump AND reinforces the conclusions of the undersigned. The interview and the affidavits, jointly and individually clearly denote that both R. Allen Stanford and James Allen Stanford relied upon and believed that the law firm of Akin Gump were their personal attorneys on an ongoing basis in a wide variety of corporate, business and personal instances that occurred over a sustained period of time. This is verified by the facts they both called upon, utilized, relied upon and compensated the Akin Gump firm for data, guidance and responses from a vast array of Akin Gump attorneys, not just one or two random individuals. This additional subsequent data clearly affords the undersigned to conclude his own independent analysis are correct and reliable conclusions, that the Akin Gump law was acting in an appropriate professional manner, over prolonged periods of time on behalf of both R. Allen Stanford and James Allen Stanford, as individuals, clients, businessmen and independent investors.

22. In a succinct economic and financial conclusion, the Stanford Group of Companies, is a privately held organization without ANY public shareholders to whom to report on an ongoing basis or publicly registered or traded debt instruments or investors (such as a pension fund or other public funding source). The law firm of Akin Gump and others who worked for the Stanford Family knew and acknowledged by their output and more specifically in their billing records that they were at all times working for a combined blend or mixture of both the person of R. Allen Stanford and his Father James Stanford **and** the Stanford Group of companies.

If the Stanford Group of Companies were semi public or fully public reporting organizations, such representation might not have been possible. However, via the very private and non reporting nature of these varied organizations and enterprises, Akin Gump via their own professional required due diligence analysis

*In the United States District Court for the Southern District of Texas*
*Affidavit of Dr. Kenneth Eugene Lehrer - June, 2010*
*Continued ...../.....*

Page 10.

was well aware of the comingling and combinations that were undertaken by the Stanford Family on an ongoing basis.

Akin Gump from the size and nature of their billing records appeared delighted to be in this ongoing dual representation position, a position most law firm only hope for and would seek to obtain in order for them to more easily sustain and increase their ongoing incomes. As Stanford grew on a linear basis, the ability of Akin Gump to profit from their due representations grew on a geometric basis."

Further affiant sayeth not.

_____
Dr. Kenneth Eugene Lehrer

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority this 1st day of July, 2010.

THOMAS P HEFELE
My Commission Expires
May 14 2014

_____
Notary Public, State of Texas

**END OF DOCUMENT**