# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA PENDERGEST-HOLT, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-3712 |
| | § | |
| CERTAIN UNDERWRITERS AT | § | |
| LLOYD'S OF LONDON AND ARCH | § | |
| SPECIALTY INSURANCE CO., | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This insurance dispute comes before the Court on the motion of Plaintiffs Laura Pendergest-Holt, Gilberto Lopez, Jr., and Mark Kuhrt for a Protective Order [Doc. # 198] ("Motion").  Plaintiff R. Allen Stanford filed a motion to join in the other Plaintiffs' Motion [Doc. # 203], which the Court granted [Doc. # 221]. Defendants, Certain Underwriters at Lloyd's of London and Arch Specialty Insurance Company ("Underwriters"), filed a Response [Doc. # 212][1] and Plaintiffs filed a Reply [Doc. # 220].  After carefully considering the parties' arguments and all applicable legal authorities, the Court **denies** Plaintiffs' Motion.

---

[1]      Underwriters also filed a Supplemental Response [Doc. # 218].

## I.    <u>BACKGROUND</u>

Plaintiffs, each an executive in one or more companies founded by R. Allen Stanford, seek in this suit reimbursement of defense costs in criminal and civil litigation under directors and officers' insurance policies (collectively, "Policy") issued by Underwriters.  As detailed at length on numerous occasions, this case comes before the Court in an unusual posture.  Following the institution of civil and criminal proceedings against them, Plaintiffs sought coverage under the Policy.  Though Underwriters originally agreed to advance defense costs (subject to a reservation of rights), in November 2009, Underwriters informed Plaintiffs that Underwriters would no longer provide coverage.  In denying coverage, Underwriters relied on the money laundering exclusion in the Policy, which exclusion "bars coverage for loss (including defense costs) resulting from any claim arising directly or indirectly as a result of or in connection with any act or acts (or alleged act or acts)" of money laundering, as that term is defined in the Policy ("Money Laundering").  Plaintiffs then filed this suit, and, in January 2010, were granted a preliminary injunction prohibiting Underwriters from "withholding payment" for defense costs "already incurred" by Plaintiffs and to be "incurred by them in the future . . . until a trial on the merits in this case or such other time as this Court orders."  *Pendergest-Holt v. Certain Underwriters at Lloyd's*

*of London*, 681 F. Supp.2d 816, 836 (S.D. Tex. 2010), *aff'd in part, rev'd in part, and modified by* 600 F.3d 562 (5th Cir. 2010).

On appeal, the Fifth Circuit  disagreed with the District Court's reasoning, but affirmed the preliminary injunction and remanded the case for further expedited proceedings on the coverage question.  *See Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 576 (5th Cir. 2010).   Specifically, the Fifth Circuit disagreed with Judge Hittner's conclusion that there must be a traditional "duty to defend" decision under the Texas insurance doctrine known as the "eight corners rule"[2] prior to a decision on indemnity obligations under the Policy with regard to the Money Laundering exclusion.   The Court of Appeals held instead, relying on the Policy language, that the Policy created a contractual obligation for the carriers to reimburse the insureds for their respective corporate-related litigation defense costs unless there was an "in fact" "determination" that Money Laundering (as defined in the Policy) had occurred.   The Fifth Circuit stated:

> The underwriters are entitled to a decision in a separate coverage action, for their bargain sought to mitigate the risk of advancing substantial fees on behalf of policyholders should it be found that the insureds did in fact commit Money Laundering as defined in the policy.   By the bargain,

---

[2]    "Under the eight corners rule, an insurer's duty to pay defense costs is determined by examining only the policy provisions and the claims in the underlying case, 'without regard to the truth or falsity of those allegations.'"  *Pendergest-Holt*, 681 F. Supp.2d at 826 (citing *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973)).

they are not compelled to remain aboard an aircraft that has lost its wings.

*Id.* at 574-75.  The court concluded its opinion by stating: "Given the effect the determination in this case may have on the executives' ability to secure criminal and civil counsel of their choosing, we are confident that the district court assigned this action on remand will be one able to proceed as expeditiously as is feasible under the circumstances."  *Id.* at 576.

On remand, the case was assigned to this Court, which announced that the "in fact" determination of whether Money Laundering occurred would be made at a trial in the context of a non-jury preliminary injunction hearing ("Trial").  The Trial is scheduled to begin on August 24, 2010.  In light of the unique circumstances of this case, and the Fifth Circuit's instructions, this Court has ruled that there will be no continuances of this setting.  Underwriters report that they have paid more than $15,000,000 in criminal and civil litigation defense costs for the four Plaintiffs collectively as of July 30, 2010.[3]  The monies are paid out of a joint fund that was purchased to cover numerous insureds under the Policy.

Plaintiffs now seek a protective order shielding them from having to answer Defendant's First Set of Interrogatories, Requests for Admissions, and Requests for Production.  In the alternative, Plaintiffs seek an order prohibiting Underwriters' use

---

[3]      *See* Response [Doc. # 212], at 1.

of such discovery responses and ask the Court to impose no adverse evidentiary inferences should Plaintiffs invoke their Fifth Amendment privilege.  The Court denies Plaintiffs' Motion.

## II.   <u>ANALYSIS</u>

### A.   <u>Stay of Discovery as to Plaintiffs</u>

Plaintiffs seek an order protecting them from having to answer Underwriters' discovery requests.  Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).  The Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Sec. & Exch. Comm'n  v. Dresser Industries Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc).

Plaintiffs contend a stay of discovery as to them is necessary in this case to shield them from a "Hobson's choice" of either answering discovery — potentially waiving their Fifth Amendment privilege against self-incrimination and subjecting

themselves to cross-examination, the fruits of which may be used against them in the civil and criminal litigation — or invoking the privilege and risking adverse evidentiary inferences in this action.

The Court is not persuaded that Plaintiffs have demonstrated good cause for a protective order.  Plaintiffs themselves filed this suit seeking expansive coverage for their defense costs under an insurance policy (the Policy) they negotiated with Underwriters.  Plaintiffs have served discovery requests on Underwriters.  The Fifth Circuit has held that Underwriters bargained for the right to an in fact determination, "in which all admissible evidence is welcome," of whether the Money Laundering exclusion in the Policy applies to bar coverage. *See Pendergest-Holt*, 600 F.3d at 574. The Circuit further instructed that, given the circumstances, this determination was to occur as expeditiously as possible.[4]  In the meantime, Underwriters are under a preliminary injunction to continue to pay Plaintiffs' extraordinarily large legal fees until the factual determination is made.  The Court is not persuaded that Plaintiffs have shown good cause or have met their burden under Rule 26 (c)(1).  They will not be permitted to seek through this suit affirmative relief of enforcement of the Policy as they construe it, *i.e.*, continued payment of defense costs under the Policy, while

---

[4]      While the Court agrees that many of the issues raised by Plaintiffs in this Motion were presented to the Fifth Circuit, the Circuit did not reach the Fifth Amendment issue. This Court rejects Underwriters' argument that the mandate rule forecloses the relief Plaintiff's seek.

simultaneously denying Underwriters discovery that Underwriters seek in an effort to defend themselves against Plaintiffs' claims and thus liability for those costs.[5]

Authorities cited by Plaintiffs do not suggest a different result.  Plaintiffs place heavy reliance on *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088-89 (5th Cir. 1979).  In *Wehling*, the district court dismissed the suit of a plaintiff who was the subject of a criminal investigation after the plaintiff invoked his Fifth Amendment privilege and refused to answer the defendants' deposition questions that went to the heart of both the plaintiff's claims and the criminal investigation.  *Id.*  On appeal, the Fifth Circuit noted that the plaintiff had both a constitutional right to silence and a due process right to a judicial determination of his civil action.  *Id.* at 1087-88.  The Court of Appeals recognized also, however, that the defendant "should not be required to defend against a party who refuses to reveal the very information which might absolve the defendants of all liability," and "that a civil plaintiff has no absolute right to both his silence and his lawsuit."  *Id.* at 1087-88.  Weighing the parties' competing interests, the Fifth Circuit held that a protective order staying discovery, and thus staying the entire case, until the expiration of the relevant criminal statute of

---

[5]    As Underwriters aptly put it, "Plaintiffs apparently envision a proceeding in which they are seeking the continued payment of millions of dollars, are free to propound discovery, have no burden to answer discovery, and wherein no inference can be drawn against them based on their invocation of their privilege against self-incrimination."  Response, at 6.

limitations was appropriate. *Id.* at 1089. While the court noted the stay was undesirable, the stay was held warranted because such an order "would not impose undue hardship on defendant and, therefore, would protect the party exercising a constitutional privilege from *unnecessary* adverse consequences." *Id.* (emphasis in original).

The circumstances at bar are materially different. The stay of discovery Plaintiffs seek is one-sided and would impose an undue hardship on Underwriters. Plaintiffs seek to continue pursuing relief while depriving Underwriters of information that may be valuable to Underwriters' defense. Underwriters are under an affirmative court order to continue paying substantial defense costs for Plaintiffs until a "determination" "in fact" of whether the Policy's Money Laundering exclusion applies. As the *Wehling* court itself stated:

> The plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to gain an *unequal advantage* against the party he has chosen to sue. To hold otherwise would, in terms of the customary metaphor, enable plaintiff to use his Fifth Amendment shield as a sword. This he cannot do.

*See Wehling*, 608 F.2d at 1087-88 (emphasis added).

Other cases cited by Plaintiff are also factually inapposite to the one at bar. For example, in all other cases relied upon by Plaintiffs, it was the defendants in both the

civil action at issue and the parallel criminal litigation that sought protection.[6]  Here
it is the plaintiffs in this civil action who seek a stay of discovery.  Plaintiffs' request
for an order protecting them from having to answer Underwriters' discovery requests
is denied.

### B.    Evidentiary Inferences

Plaintiffs request in the alternative that the Court prohibit Underwriters from
any use of Plaintiffs' discovery responses and that the Court not impose any adverse
evidentiary inferences against Plaintiffs should they invoke their Fifth Amendment
privileges.  Such a request is premature.  Discovery is ongoing in this case, no
evidence has been presented to the Court, and Underwriters have not yet requested
that the Court draw any adverse inferences against Plaintiffs.  The Court declines to
reach this issue at this time.  Plaintiffs' Motion is denied without prejudice to this
extent.

---

[6]     *See Kmart Corp. v. Aronds*, 123 F.3d 297, 298-99 (5th Cir. 1997) (discussing
background facts and dismissing appeal for lack of jurisdiction); *In re Enron Corp.
Sec., Derivative & ERISA Litig.*, 2003 WL 25508889, at *2 (S.D. Tex. Mar. 25,
2003); *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech.,
Inc.*, 886 F.Supp. 1134, 1138-39 (S.D.N.Y. 1995).

### III.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Protective Order [Doc. # 198]

is **DENIED**.

SIGNED at Houston, Texas, on <u>August 11</u>, 2010.

Nancy F. Atlas
United States District Judge