UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA PENDERGEST-HOLT, *et al.*, § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-09-3712 | |
| § | | |
| CERTAIN UNDERWRITERS AT § | | |
| LLOYD'S OF LONDON AND ARCH § | | |
| SPECIALTY INSURANCE CO., § | | |
| Defendants. § | | |

## PRELIMINARY MEMORANDUM AND ORDER
## ON
## DAVIS AND VAN TASSEL MATTERS

Laura Pendergest-Holt ("Holt"), Gilbert Lopez ("Lopez") and Mark Kuhrt ("Kuhrt") (collectively, "Respondents") have filed a Motion in Limine [Doc. # 261] ("Motion")[1] for orders regarding documents on which Defendants Certain Underwriters at Lloyd's of London and Arch Specialty Insurance Company ("Underwriters") seek to heavily rely at the preliminary injunction hearing to commence August 24, 2010. First Plaintiffs seek to preclude Underwriters from using the plea agreement and the transcript of the rearraignment (i.e., guilty plea proceeding) of James Davis, former Chief Financial Officer for Stanford Financial

---

[1]  The Court deems R. Allen Stanford ("Stanford") also to have joined in the Motion. He is included in the definition of "Respondents."

Group Company ("SFGC"),[2] in a criminal case filed against him[3] in which he admitted criminal conduct closely related to pending criminal charges[4] and a civil enforcement proceeding filed by the Securities and Exchange Commission ("SEC")[5] against Plaintiffs.

Plaintiffs also seek to preclude Underwriters' use of any of the 22 declarations and affidavits[6] prepared and filed by Karyl Van Tassel, a forensic accountant and fraud examiner hired by Ralph Janvey, the Receiver for all assets owned or controlled by R. Allen Stanford directly or through corporations he controlled (collectively, the

---

[2] There is indication that Davis was Chief Financial Officer also for Stanford International Bank, Limited ("SIB").

[3] *United States v. Davis*, Crim. No. H-09-335 (S.D. Tex. filed Jun. 18, 2009).

[4] *See United States v. Stanford*, et al., No. 4:09-CR-0342 (S.D. Tex. filed Jun. 18, 2009).

[5] *See Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, et al., No. 3:09-CV-298 (N.D. Tex. filed Feb. 17, 2009) ("*SEC Litigation*").

[6] The motion refers to 22 affidavits and declarations, but it is unclear if in fact Ms. Van Tassel now has prepared 23 such documents, as Underwriters submitted one dated July 23, 2010 as Exhibit C to its Response in Opposition to Stanford's Motion to Strike Expert Reports and Testimony of Mark Berenblut [Doc. # 288-4].

"Stanford Financial Group"[7] or "SFG"). Underwriters have responded to the Motion[8] and Respondents replied.[9]

Underwriters cite various grounds for admission of the out-of-court statements by Davis, who is unavailable by virtue of his invocation of his privilege against self-incrimination under the Fifth Amendment,[10] and Van Tassel, who is, practically speaking, unavailable.[11] The Court discusses each of these grounds hereafter.

---

[7] The Stanford Financial Group is a business name used by Stanford in his promotional materials. *See, e.g.,* SIB 2007 Marketing Brochure, Attachment VAN TASSEL-3 to Van Tassel's 5/24/10 Declaration [Doc. # 444-2 in *SEC Litigation*].

[8] Underwriters' Brief in Support of Admission of James Davis' Plea Agreement and Plea Allocation [Doc. # 265] ("Davis Brief"); Brief in Support of Admission of Karyl Van Tassel's Reports [Doc. # 264] ("Van Tassel Brief").

[9] Response to Defendants' Brief in Support of Admission of James Davis' Plea Agreement and Allocution and Karyl Van Tassel's Reports by Laura Pendergest-Holt, Gilbert Lopez and Mark Kuhrt [Doc. # 305].

[10] There is no dispute that Davis, despite his plea of guilty to numerous criminal charges against him, is unavailable to be subpoenaed to testify in this civil proceeding. Through his attorney, Davis has informed the parties that he would invoke his Fifth Amendment right against self-incrimination to any and all questions posed in this case. *See* Doc. # 265, at 16-17. The parties appear to concede that there is no need to call him to assert his privilege in open court, either to specific questions or globally. *See United States v. Young Bros., Inc.*, 728 F.2d 682, 690 (5th Cir. 1984).

[11] Van Tassel is essentially unavailable as a result of an injunction against the issuance of employment of process on the Receiver's agents issued by the Honorable David Godbey, the presiding judge in the *SEC Litigation* and other civil actions. *See* Amended Order Appointing Receiver [Doc. # 1130 in *SEC Litigation*], at 9. Judge Godbey also ruled that Underwriters, with his leave, could take Van Tassel's deposition if they agreed to pay half of the fees and expenses the Receiver incurred in obtaining her opinions (which ran into the millions of dollars) or limited the
(continued...)

Respondents contend that admission of these documents is not supported by the applicable Federal Rules of Evidence, that the materials are inherently unreliable, and admission would be unfair given the circumstances of this case because, for example, neither Davis nor Van Tassel has been cross-examined by the parties in this case or elsewhere.

The Federal Rules of Evidence "shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined. FED. R. EVID. 102. The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. The Court would prefer to make rulings at the hearing on the matters covered in this Order, when the rulings can be issued after oral argument that may clarify certain matters. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (noting that although the Federal Rules of Evidence

---

[11] (...continued)
examination to simply authenticating her July 27 Declaration. *See* Order [Doc. # 1122 in *SEC Litigation*]. Because of the prohibited cost, Underwriters elected to limit the deposition to authenticating Van Tassel's public declarations and affidavits *see* Order, Exh. B to Motion for Clarification [Doc. # 208-3]. In deference to Judge Godbey, this Court thereafter ruled that Plaintiffs, in cross-examination, were also limited to the deposition topics approved by Judge Godbey. Order [Doc. # 215]. Thus, Van Tassel, as a practical matter, is unavailable to testify at the preliminary injunction hearing in this case.

do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials); *U.S. v. Chan,* 184 F.Supp.2d 337, 340 (S.D.N.Y. 2002) (citing *Luce*, 469 U.S. at 41 n.4; *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996); *National Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F.Supp. 276, 283 (S.D.N.Y.1996)).  It is recognized that "[e]vidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *See Chan*, 184 F. Supp. 2d at 340 (citing *Noble v. Sheahan*, 116 F.Supp.2d 966, 969 (N.D. Ill. 2000)).  However, in the interests of justice and to provide guidance to the parties for the expedited preliminary injunction hearing commencing tomorrow, August 24, 2010, the Court makes these abbreviated limine rulings in advance of the opening statements and presentation of the evidence. The Court reserves the right to modify these rulings if the evidence warrants and to provide further authorities and explanation for these rulings, as necessary.

In the interests of time, the Court assumes familiarity with the facts of this case, as set forth in earlier rulings of the Honorable David Hittner, the Court of Appeals for the Fifth Circuit, and the undersigned.

### A. Davis's Written Plea Agreement and Transcript of Davis's Rearraignment

Davis, as noted, is unavailable to testify at the preliminary injunction hearing.[12] Underwriters rely on Federal Rules of Evidence ("F.R.E.") 804(b)(3) and 807 for admission of Davis' plea agreement and rearraignment transcript.[13] Underwriters correctly acknowledge that the statements at issue are hearsay unless subject to a specific exception to the hearsay rule. The Court concludes that the F.R.E. 804(b)(3) and the residual exception to the hearsay rule, F.R.E. 807, warrant admission of many of the statements in Davis's plea agreement and plea transcript.

The evidentiary dispute centers on the admissibility of the factual matters described in the factual basis for Davis's guilty plea. Much of the factual information Davis's plea agreement and the rearraignment transcript is against Davis's penal and other interests, and is admissible under F.R.E. 804(b)(3). *See United States v. Westmoreland*, 240 F.3d 618, 627 (7th Cir. 2001). To the extent the factual matters

---

[12]   *See* note 10 *supra*.

[13]   Underwriters attempt also to rely on F.R.E. 803(8), which pertain to records and reports of public offices or agencies. This exception to the hearsay rule is inapplicable. To the extent matters stated by the Assistant United States Attorney during the rearraignment are statements of the United States Government, they are not relevant. The relevance of the Davis documents (*i.e.*, the written plea agreement and as well as Davis's comments during the rearraignment) is Davis's acknowledgment that they are accurate statements of what he believes happened. The relevance of these statements is that *Davis* personally acknowledges he committed serious crimes and explains based on his personal knowledge various matters material to the proceedings here. The Court will not admit the materials under Rule 803(8).

are inculpatory of Davis, the matters are admissible. *See U.S. v. Chase*, 451 F.3d 474, 480 (8th Cir. 2006); *United States v. Scopo*, 861 F.2d 339, 348 (2d Cir. 1988). Davis has pleaded guilty to two conspiracy charges, each carrying imprisonment sentences of five years, plus a mail fraud charge which carries a maximum sentence of 20 years. The plea agreement and related statements expose Davis to substantial prison time. On the other hand, to the extent Davis inculpates others, the statements are not admitted at this time. To that extent, these statements are made in an effort to cooperate with the Government and thereby reduce Davis's ultimate term of imprisonment.

In addition, Underwriters seek admission of Davis's entire plea agreement and rearraignment transcript under the residual hearsay rule, F.R.E. 807. The Court concludes that application of this rule results in the same result as reached above under F.R.E. 804(b)(3). Rule 807 provides that:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts;

"The residual exceptions authorize the admission of hearsay statements having 'circumstantial guarantees of trustworthiness' equivalent to those of the other enumerated hearsay exceptions, as long as the trial court determines that the

statements are sufficiently material, probative, and in the interests of justice." *United States v. Ismoila*, 100 F.3d 380, 393 (5th Cir. 1996). The particular guarantees of trustworthiness must be drawn from the totality of the circumstances surrounding the making of the statement. *See id.* (citing *Idaho v. Wright*, 497 U.S. 805, 820-22 (1990)).[14]

The Court will admit Davis's sworn factual statements in evidence about conduct in which he personally engaged. Davis pleaded guilty under oath in open court to three serious criminal charges, which carry the potential of many years of imprisonment. The factual material in his plea agreement and transcript describing Davis's personal conduct are among the strongest evidence of those matters. *See, e.g., RSBI Aerospace, Inc. v. Affiliated FM Insurance Co.*, 49 F.3d 399, 403 (8th Cir. 1995) (in coverage determination for lost inventory under insurance policy that excluded loss caused by any employee of the insured, court allowed the guilty plea of plaintiff's employee that he set the fire and confirmed he was employed by plaintiff at the time of the fire, and stated "guilty plea taken in open court is a sworn statement and, while not always conclusive, is powerful evidence."). The plea-related factual information,

---

[14] Rule 807 also requires that the proponent of a statement make known to the adverse part its intention to rely upon that statement sufficiently in advance of the trial or hearing to provide the adverse part with a fair opportunity to prepare to meet it. Underwriters early in this case stated they would rely on Davis' plea, for instance, in the November 16, 2009, letters denying coverage for Plaintiffs' claims under the Policy. Underwriters thus satisfied their notice requirements under Rule 807.

while hearsay, has circumstantial guarantees of trustworthiness equivalent to other evidence otherwise admissible under Rules 803 and 804. For instance, he knows that the Government continues to investigate the matters and is relying on his information to do so. If Davis is found to have lied, his can be charged with perjury.

Moreover, the factual matters in Davis's plea agreement and transcript are offered as evidence of material facts. Davis, a top executive and insider to the Stanford group of companies, is alleged to have been an integral part of Plaintiffs' alleged fraudulent scheme. He is the only key executive who has made any public statements since the criminal indictments have been filed and the SEC brought its charges. *See, e.g., In re Slatkin*, 525 F.3d 805, 812 (9th Cir. 2008) (concluding that the trustee was offering the plea agreement as evidence of a material fact under Rule 807 where it was offered to show that the pleading defendant was operating a Ponzi scheme over a fifteen-year period and, in doing so, had the fraudulent intent to defraud his creditors); *Chlopek v. Jarmusz*, 877 F. Supp. 1189, 1195 (N.D. Ill. 1995) (§ 1983 action against the City of Chicago and a police officer for injury to plaintiff; information about whether plaintiff possessed a gun was received through a transcript of guilty plea hearing in which non-party stated he gave a loaded weapon to plaintiff on the day of the shooting); *In re Bayou Group, LLC,* 396 B.R. 810, 834 (S.D.N.Y. 2008) (in suit by investors under the Bankruptcy Code to recover as fraudulent

conveyances amounts principals were paid in the year prior to the collapse of the debtor, court admitted to establish a prima facie case of fraud three principals' pleas and allocutions after they pleaded guilty to perpetrating a scheme to defraud investors by disseminating reports and financial statements that contained materially false statements); *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 12 (S.D.N.Y. 2007) (concluding that the criminal information of the principal who controlled the hedge fund amply supported the finding that the hedge fund was a Ponzi scheme because the guilty plea set forth that the principal "continuously falsified the Fund's performance, sent account statements to current investors that reflected significant gains, concealed the Fund's true state from its auditors, and used his falsified records to attract new investors").

The Court also concludes that the factual statements by Davis are more probative on the many factual points for which they are offered than any other evidence which the proponent can procure through reasonable efforts. Davis was an integral part of the scheme to which he has confessed. Underwriters have no access to any other officers or high level employees. Further, the press of time, in light of the unusual posture in which the parties and the Court find themselves, has precluded Underwriters' full investigation of the facts. It is possible the Court's analysis will have to be refined in more detail as the hearing progresses and the Court is able to

consider the evidence in context. However, generally, as to the conduct in which Davis admits he personally engaged, the Court finds that his own statements are more probative than any other evidence currently available.

Finally, as to the Rule 807(C) factor, the Court finds that the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence. Underwriters have had merely months with the millions of documents, while Plaintiffs have had years to work with the companies and many of the documents in one fashion or another for years – both before and after the cases against were commenced.[15]

Plaintiffs argue that *Williamson v. United States*, 512 U.S. 594, 600–04 (1994), *Lilly v. Virginia*, 527 U.S. 116, 131 (1999), and *Crawford v. Washington*, 541 U.S. 36, 61 (2004), support exclusion of Davis's plea materials in their entirety. The Court disagrees as described above. In making this ruling, the Court has taken account of the important constitutional and practical considerations discussed in these criminal cases.

It is noted that Underwriters also argue that the Federal Rules of Evidence need not apply to this preliminary injunction proceeding, which is also a bench trial with

---

[15] The Court recognizes that Plaintiffs who are on bond have had an easier time than Stanford, who is in custody. However, even he has had extensive resources at his disposal.

the Court as factfinder. The Court agrees that typically the rules of evidence are relaxed in the bench trial and/or preliminary injunction setting. *See Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) (procedures in district court are less formal at preliminary injunction stage, "and the district court may rely on otherwise inadmissible evidence, including hearsay evidence"); *Null v. Wainwright*, 508 F.2d 340, 344 (5th Cir. 1975) ("Strict evidentiary rules of admissibility are generally relaxed in bench trials . . . ."). The Court, however, applies the rules of evidence as they are intended, namely, to permit only reliable information into the record and thereby enable the Court to make the necessary preliminary but crucial "in fact" determination about the Policy's Money Laundering exclusion in a just manner.

### B. Van Tassel Declarations

Underwriters argue that the declarations, affidavits, and their exhibits prepared by Karyl Van Tassel (collectively, "Van Tassel Reports"), the forensic accountant retained by the Stanford Receiver are admissible under F.R.E. 807, the residual hearsay exception.[16] It is unclear exactly which Van Tassel Reports Underwriters

---

[16] As noted above, in order for evidence to be admitted under Rule 807, the proponent of the evidence must give the adverse party the notice specified within the rule; the statement must have circumstantial guarantees of trustworthiness equivalent to the 23 specified exceptions listed in Rule 803; the statement must be offered as evidence of a material fact; the statement must be more probative on the point for which it is
(continued...)

seek to introduce at the hearing and meaningfully rely on. For reasons explained below, at this time, the Court will receive in part the Van Tassel Reports dated June 18, 2010, and July 23, 2010,[17] to the extent they contain objective findings or other conclusions based on documents or other reliable information. It is noted, however, that the admission of Van Tassel Reports does not include her findings on ultimate facts that may be in issue in this litigation, such as whether there was a "ponzi scheme" or what any particular Plaintiff knew at any point in time.

It is noted initially that there is no dispute that Underwriters have provided Plaintiffs with notice of their intent to rely upon on Van Tassel's Reports. The Court addresses the remaining conditions for admissibility under Rule 807 in turn.

The Court finds that there are "circumstantial guarantees" of the trustworthiness of the factual analysis Van Tassel and her expert staff have performed and described in her Reports. On February 16, 2009, the United States District Court for the

---

[16] (...continued)
offered than any other evidence the proponent can procure through reasonable efforts; and the general purposes of the Federal Rules and the interests of justice must best be served by admission of the statement into evidence. FED. R. EVID. 807.

[17] These are the Reports to which the Court has had access, are very recent and thus very comprehensive, and contain information based on extensive review of Stanford entities documents and communications, as well as interviews with many people with firsthand knowledge of the events as they unfolded. The Court may receive some or all of other Van Tassel Reports if they are not cumulative and are shown to be equally reliable.

Northern District of Texas appointed Ralph Janvey as Receiver for the Stanford entities. On the same day, the Receiver retained FTI to assist him in investigating the alleged Stanford fraud. According to Van Tassel, FIT has "perform[ed] a variety of services, including assisting in the capture and safeguarding of electronic accounting and other records of the Stanford Entities, and forensic accounting analyses of those records, including cash tracing."[18] Van Tassel, who has "25 years of experience providing a variety of audit, accounting, tax, litigation, valuation and other financial advisory services," is a Certified Public Accountant and the Senior Managing Director of FTI consulting.[19] Van Tassel interviewed dozens of people who were formerly employed by or who worked with Stanford entities.[20] In addition, during at least 18 months of intense work, Van Tassel and her FTI staff examined many thousands of documents, including available accounting and other records (including email files of certain former Stanford employees) relating to numerous Stanford entities located in and/or gathered from Texas, Mississippi, Tennessee, Florida; St. Croix, United States

---

[18]   Declaration of Karyl Van Tassel, Appendix A-1 to Underwriters' Brief in Support of Admission of Karyl Van Tassel Investigative Reports [Doc. # 264-1], dated June 18, 2010 ("June 18, 2010 Van Tassel Declaration"), ¶ 4; Declaration of Karyl Van Tassel, Appendix C to Underwriters Opposition to Stanford's Motion to Strike Expert Report of Mark Berenblut [Doc. # 288-4] (sealed), ¶ 4.

[19]   *See id.* ¶ 1.

[20]   *See* Attachment KVT-2 to June 18, 2010 Van Tassel Declaration. Indeed, Van Tassel reports that she interviewed Holt and Lopez.

Virgin Islands, Antigua, Barbuda, and other Stanford locations within and outside the United States. Van Tassel and her staff also examined extensive "SIB customer records, including but not limited to paper and electronic records documenting SIB CD purchases, interest payments and redemptions."[21] FTI also obtained and analyzed paper and electronic files from third-party financial institutions where bank accounts of various Stanford entities are or were located, and electronic and other data from institutions that currently hold SGC customer accounts and former employee accounts, as well as STC accounts.[22] This intense, complex, and geographically far-flung work apparently has cost several, if not more, millions of dollars and simply cannot be replicated by the parties in this case.[23]

The Court finds that much of the information FTI has gathered is evidence of significant and material facts. *See* FED. R. EVID. 807(A). For instance, findings by FIT about Stanford entities' use of proceeds of investors' payments for SIB CDs, the timing and cost of assets acquired by various Stanford entities (*e.g.*, real estate and

---

[21]   *Id.*

[22]   These institutions apparently include Pershing, LLC and JP Morgan Clearing Corp. *Id.*

[23]   This estimate is based on parties' and the Receiver's statements in this and other suits in which access to the Van Tassel Reports have been litigated. *See, e.g., Janvey v. Alguire*, Civil Action No. 3:09-cv-00724 (N.D. Tex. Apr. 20, 2009); *Certain Underwriters at Lloyd's of London v. Ralph S. Janvey*, Civil Action No. 3:09-cv-1736 (N.D. Tex. filed Sept. 17, 2009).

private equity investments), involvement (or lack thereof) of outside auditors, Stanford entities' reports to investors and regulators, and the contents of training and compensation of financial advisors who sold SIB CDs, are highly probative evidence of material facts in this coverage suit. It appears that this information comes from FTI's review of primary corporate and employees' documents, as well as other highly reliable sources.

Under subsection (B) of Rule 807, the statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts. While the analysis of how probative each statement or piece of information is should be done by category or on a piecemeal basis, the Court makes this general ruling in order to provide guidance to the parties pre-hearing. The Court finds that this factor has been met as to the documentary-based or other objective information FTI offers through the Van Tassel Reports. To the extent of topics listed above, the information offered is extremely probative. Moreover, it is more probative than any other evidence the proponent can procure through reasonable efforts. As noted above, Underwriters have not had access to much of the information that Van Tassel has reviewed. The time for discovery has been quite short for a case of this complexity. Many witnesses are now unavailable.

Finally, as to subsection (C) of Rule 807, the Court concludes that the general purposes of the Federal Rules of Evidence and the interests of justice are best be served by admission of the objective or document-based findings into evidence.

Plaintiffs complain that they will suffer unfair prejudice from admission of the Davis plea matters or the Van Tassel Reports. The Court is unpersuaded. At this stage, it appears that many of the findings in the Van Tassel Reports are very relevant. Further, at this time, the Court finds that Plaintiffs have not shown – as to any particular aspect of the Reports – that the probative value of the matters explained by Van Tassel is substantially outweighed by the danger of unfair prejudice, confusion of the issues or any other considerations under Rule 403. The Court will entertain argument on particular findings of Van Tassel during the hearing or in post-hearing briefing, and will undertake a Rule 403 analysis as necessary.

**C.     Conclusion**

For the foregoing reasons, Plaintiffs' Motion in Limine [Doc. # 261] is preliminarily **GRANTED in part** and **DENIED in part**.

SIGNED at Houston, Texas, this **23rd** day of **August, 2010**.

_____
Nancy F. Atlas
United States District Judge